The Hoboken and Manhattan Railroad Company et al.

*v.*

The Jersey City, Hoboken and Paterson Railway Company and Public Service Corporation of New Jersey.

[Argued December 11th, 1905. Decided December 14th, 1905.]

1. A railway tunnel company, desiring to extend its tunnel under the North river, still underground, leased from defendant connecting street railway company the right to use certain of its land for that purpose for nine hundred and ninety-nine years. The land so leased was vacant, except for an old storehouse, and it appeared that the use of the land for the extension of such tunnel would not interfere in any way with the

exercise of the franchises of the lessor.—*Held,* that such lease was not beyond the lessor's power to grant.

2. Where complainant under a lease from defendant was entitled to enter certain land for the extension of complainant's tunnel which had been constructed under the North river, but defendant intervened and with a strong hand refused to permit complainant to do the work contemplated, complainant's damages being uncertain, it had no adequate remedy at law, and was entitled to an injunction restraining such acts.

3. Where an injunction was granted restraining defendant from interfering with a strong hand to prevent complainant from constructing certain improvements under a lease, the injunction will not be suspended pending an appeal under a statute declaring that no appeal from an order granting an injunction shall suspend or modify its operation without an order of the chancellor, and that a suspension or modification thereof shall extend only so far as may be necessary to preserve the subject of the appeal, and shall not in any case be allowed to destroy the right established or protected by the decree appealed from.

On order to show cause.

*Messrs. Collins & Corbin,* for the complainants.

*Mr. Frank Bergen* and *Mr. William D. Edwards,* for the defendants.

PITNEY, V. C. (orally).

I have thought this matter over seriously and I will now state the reason for my action.

The complainant is the Hudson Tunnel Company; the defendant is a trolley company, having a terminus near the southerly Hoboken ferry, at Hudson Place.

The tunnel company built a tunnel under the North river, ending on this side, some distance—half or three-quarters of a mile from the ferry—the terminus of the trolley.

Desirous of extending its business and of intercepting the travel that is brought to the ferry by the trolley company from the high grounds about Hoboken, the tunnel company entered into a written contract with the trolley company for their mutual benefit.

It was prepared with great care—it is not a loose contract—and there is no allegation or proof that there was any fraud or accident in connection with it.

That contract, in effect, gives a lease by the trolley company to the tunnel company of a certain tract of land in Jersey City, a map of which is exhibited and proven before the court, by which there appears to be a considerable piece of land, owned but not used for its present purposes by the trolley company.

That lease gives the tunnel company a certain right, for nine hundred and ninety-nine years, by clear and express language, in that plot of land.

The object was to extend the tunnel from its present terminus, still under ground, until it reaches that point, and there to have an elevation to the surface, either by inclined plane or otherwise, in that square, and there to make a common terminus for passengers, so that passengers arriving at that point from the hill country and the body of the city to the west can conveniently take the tunnel and cross to the city of New York without taking the ferry, and, *vice versa,* passengers coming from New York to Hoboken would come to the surface from the tunnel and take the trolley.

That was understood to be a matter of mutual benefit to each party, otherwise we must presume they would not have entered into it.

When the time came for going to work on the construction of the tunnel near that point—and especially for the tunnel company to excavate—in order to sink their shaft and start their work on the underground connection between this terminal and the present terminal, some half a mile distant, there seemed to be a reluctance on the part of the trolley company to do as they expressly covenanted to do.

The tunnel company thereupon started the work. They entered upon this piece of land, which is vacant, except as a storehouse for worthless rubbish, and began to dig; there they were met by physical opposition; the trolley company did not take the course which litigants generally take, and which this court thinks they ought in all cases to take—and never to resort to the strong hand—but it interfered by the strong hand, and arrested and drove out the workmen of the tunnel company.

The tunnel company thereupon prepared its bill, with some care, addressed to this court, setting forth those facts; setting forth the contract and the correspondence, and setting forth that they had attempted to go to work, as by the language of the contract I think they had the right to do, and obtained an order to show cause why an injunction should not issue.

By their bill they pray that the court will undertake to see that this contract is carried out under its supervision, and, incidentally, they asked for an injunction, not to restrain the defendants from doing anything, not to restrain the trolley company from breaking or damaging anything, but to prevent them, by the strong hand, from interfering with the complainants in their legitimate work under that contract, where the trolley company had agreed under seal that they should work.

On the return day the bill was presented to me, with a mass of affidavits and maps, which rendered the matter quite clear. When these had been read, I asked Mr. Bergen and Senator Edwards, counsel for the trolley company, if they had any affidavits in reply, and they said they had an answer and a plea.

The answer handed up was by the Public Service Corporation, in which it was declared it had nothing to do with the contract. The plea was by the trolley company, and it simply set up that the contract was beyond their power—that it was *ultra vires.* It further added that two of its stockholders had objected to it, and had filed a bill to have the whole contract set aside. There were no proofs establishing the status of the two men who had objected to the contract; there were no new facts proven that the court could act upon in the matter of granting or refusing to grant an injunction—and the facts upon which I must act must be shown either by record or affidavit.

But there was not an affidavit produced. It was simply stated that the execution of the contract was opposed. All they really said was, "It is *ultra vires,* and we want that matter settled before anything is done." No contention was made that the letter and spirit of the contract did not authorize what the complainant was doing.

I thought then, and I think now, that the plea was perfectly

futile for any purpose whatever, except to act as a demurrer to the bill, and the whole question, then and now, is, did the bill, with the affidavits, set up a case? I thought then, and I think now, that it does. The complainants were in possession, peaceably, trying to work under a deed and contract which gave them the land in the strictest language, and they were proceeding to carry out that particular purpose, and I think they had a perfectly clear case at law, requiring no adjudication at law to bring it within the jurisdiction of this court. And the defendants were stopping them by force; they did not come to this court by bill and ask this court to restrain the complainants or their workmen; they did not take that course, nor would they suggest anything by way of defence at all, except that they wanted the question first settled as to whether the contract was *ultra vires.*

I think that under the pleadings and the affidavits it is not *ultra vires;* I do not think there is the least doubt about it. It is simply a lease of a certain tract of land—because it appears clearly by the map that it is not used at all except a little travel on one side—for the tracks of the company, and it is a matter of vision that it is not necessary for the present use of the railroad company, and the idea of *ultra vires* does not apply at all to such a case.

I know of no reason why any man who wishes to buy that block should hesitate to take title to it.

The lease under which complainant claims does not interfere with the exercise of the defendants' franchise in the land. It is clearly property which is subject at law to the ordinary disposition of the owner, and the title includes the right to convey.

It may be that the railroad company could not lease its whole tracks without some legislative authority, but that is not the question here, and it has been well remarked by Mr. Corbin that there is nothing about the use of this piece of land, as indicated by the proofs, to show that it is *ultra vires.* I have no doubt about it.

The next point is, shall the matter be treated as a mere trespass?

The ground on which I went the other day is that this company has this contract, and had presumably acted upon it; it has finished its tunnel under the Hudson river on the strength of it. I do not recollect the date of the contract.

Mr. Corbin—More than a year and a half ago—April, 1904.

The Court—And it is held up now in the operation of carrying out the enterprise.

Nobody could ever ascertain what the damages are or will be to it. And one ground for this court interfering in cases of trespass is that the damages are uncertain, and that the remedy at law is entirely inadequate.

This bill, however, asks the court to go further and superintend the carrying out of this contract—something in the nature of specific performance—and, as has been stated by Mr. Corbin, and shown by the authorities, it is the duty of the court in such cases to prevent violence and to supervise the carrying out of such a contract.

So, independent of preserving to these parties the right to work under that contract, there is a prayer in their bill which certainly calls for something this court should and ought to do, even though it does not go as far as Mr. Corbin would like.

An order for restraint was made on Monday last. An appeal was taken, and on Tuesday evening Mr. Bergen and Mr. Edwards called at my study, at Morristown, and said to me that an appeal was taken, and asked that the operation of the restraint be suspended. I heard their application, and, without arriving at any judgment in the matter, I granted an order to show cause why the operation of the injunction should not be stayed pending the appeal, returnable here this morning, so that for one day I stayed the operation of the injunction, during which time the defendant has been at liberty to go on with a gang of men and interfere, if it could, with the operations of the complainants.

Senator Edwards—Nothing was done.

The Court—Reference has been made to the rule—the fundamental rule—that the disposition and desire of this court is to preserve things, and not destroy them, *pendente lite;* especially

where an appeal is taken—pending the appeal—the subject-matter of the suit should be preserved *in statu quo,* so that the party appealing can receive the benefit of the appeal.

That is an ideal and desirable object, but every lawyer who has thought of it will tell you it is absolutely impossible; it is a thing which cannot be done in every case.

I will put it to you in this way: A man thinks he owns a house and lot; another man claims that two feet of it is his, and he commences to cut away the two feet. The gentleman whose house is going to be destroyed asks for an injunction; the chancellor thinks there is no case for an injunction; he has not shown title, and he refuses an injunction. An appeal is taken; the appellate court takes a different view, and when he gets his decree of reversal the house has been cut down.

That is one case; there are plenty of other cases, which can be imagined, where it is quite impossible to preserve the thing *in statu quo.* I have heard that question discussed over and over again by the bar, and the opinion generally expressed is that the ideal of the late chief-justice can never be attained.

However, that is the principle on which courts ought to go as far as practicable, and after the decision of the court of errors and appeals in the famous *National Docks Case,* our friend here, Mr. Corbin, who is famous for his work in that line, drafted and had this act passed, and it has now become part of our code.

The section declares, in its first half, that "no appeal taken from an order or decree granting an injunction shall suspend or modify the operation of the injunction without an order of the chancellor," &c.

That part of the section does not help the defendants, and counsel will hardly contend that their appeal has modified the injunction, hence they ask a special order of this court. And that brings us to the latter part of the section, which declares that a suspension or modification by the court shall extend only so far as may be necessary to preserve the subject of the appeal, and shall not in any case be allowed to destroy the right established or protected by the order or decree appealed from. That amounts to a direction to the chancellor, if he sees fit, to modify

the injunction, and to so do it as to preserve, and not destroy, the right protected by the order or decree appealed from.

Now, what is the right here protected by the order appealed from? It is simply the right to be on those premises and to work there without being physically obstructed in that work. Now, that right I am forbidden to disturb or destroy, and I conceive it to be a continuing right, running from day to day.

All that I determine is this: The defendants have shown no answer to the complainants' case; it is open to them to do it. If they have an answer, let them put it in and present a bill of their own, and then they will bring the case within the scope of this act.

But the only thing here in question is the right of these people not to be dealt with by the strong hand; that is all. I have not protected them in anything else. I think they have shown a *prima facie* case, which has not been answered. They have a right to go on that ground and work under that contract; that is the right I protected by the order, and that right ought not to be taken away from them pending the appeal. They ought not to be subjected to treatment by the strong hand; this court is against that sort of thing at all times; it deprecates that kind of thing.

Go to the law if you do not want these men to dig there—the courts are open—but do not drive them out by force and come here and say we have reasons, but we do not want to tell them. The courts say you must not do it.

I will not suspend the injunction in this case for that reason. I refuse to suspend the operation of the injunction and will advise that the order be immediately discharged.